**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| **SKANSKA USA BUILDING INC.** ) | |
| 389 Interpace Parkway, 5th Floor ) | |
| Parsippany, New Jersey 07054 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:19-cv-1835 |
| ) | |
| **AMERICAN GEOPHYSICAL UNION** ) | |
| 2000 Florida Avenue, NW ) | |
| Washington, D.C. 20009 ) | |
| ) | |
| Serve:  Corporation Service Company ) | |
| Registered Agent ) | |
| 1090 Vermont Avenue, NW ) | |
| Washington, D.C. 20005 ) | |
| ) | |
| Defendant. ) | |

_____)

**VERIFIED COMPLAINT**
**TO ENFORCE MECHANIC'S LIEN AND FOR BREACH OF CONTRACT**

Pursuant to Federal Rule of Civil Procedure 3 and Local Civil Rule 5.1(f), Plaintiff Skanska

USA Building Inc. ("Skanska"), by and through its undersigned counsel, states as follows for its

Verified Complaint against Defendant American Geophysical Union ("AGU"):

**PARTIES**

1.      Skanska is a Delaware corporation with its principal place of business located at

389 Interpace Parkway, 5th Floor, Parsippany, New Jersey 07054.  At all times relevant hereto,

Skanska was duly licensed to perform construction management in the District of Columbia.

2.      AGU is a District of Columbia corporation with its principal place of business

located in the District of Columbia.  Upon information and belief, AGU is the fee simple owner of

the real property located at 2000 Florida Avenue, NW, Washington, D.C. 20009 (the "Property").

## JURISDICTION AND VENUE

3.      The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00.

4.      The Court has personal jurisdiction over AGU because, *inter alia*, AGU is organized under the laws of the District of Columbia, owns real property in the District of Columbia, and regularly conducts business in the District of Columbia.

5.      Venue is appropriate in this Court under 28 U.S.C. § 1391(b) because AGU resides in the District of Columbia, the Property is located in the District of Columbia, and a substantial part of the events giving rise to this Verified Complaint took place in the District of Columbia.

## STATEMENT OF FACTS

### *AGU and Skanska Enter Into the Contract*

6.      On March 11, 2016, Skanska and AGU executed a Standard Form Agreement Between Owner and Construction Manager as Constructor (AIA A133-2009) and General Conditions of Contract (AIA A201-2007) (together, the "Contract"), requiring Skanska to perform construction management services for the renovation and interior fit-out of the Property.  A true and correct copy of the Contract is attached hereto and incorporated by reference as Exhibit 1.

7.      Skanska agreed to complete the Project in accordance with plans and specifications prepared by AGU's architect of record, Hickok Cole Architects ("HCA").  A133-2009 § 1.1.2.

8.      AGU engaged Interface Engineering, Inc. ("Interface") under a separate agreement, for the purpose of engineering and designing the mechanical, electrical, and plumbing (MEP) scope of work at the Project.

9.      AGU designated Mark G. Anderson Company, Inc. ("MGAC") to serve as its Owner Representative and authorized agent for the duration of the Project.  A133-2009 § 3.2.

### The Pre-Construction Phase

10.     AGU and Skanska contemplated that the Project would be completed in a two-part, phased construction that included a Preconstruction Phase and a Construction Phase.

11.     Skanska's responsibilities during the Preconstruction Phase included, among other things, preliminary evaluation of the Project objectives, preliminary scheduling, and budgeting for the construction work, coordination and consultation with HCA and MGAC concerning the proposed site use, selection of materials, review of Project sustainability plan, and preparation of documents for procurement of major subcontractor trades.  A133-2009 §§ 2.1, 2.2.

12.     AGU agreed to pay Skanska a firm fixed price of $185,000.00 for the Preconstruction Phase services that Skanska performed at the Project.  A133-2009 § 4.1.1.

### The Guaranteed Maximum Price Amendment

13.     The Contract contemplated that the parties would negotiate and finalize a Guaranteed Maximum Price (GMP) Amendment by which Skanska would receive monthly compensation for work performed during the Construction Phase, on a cost-reimbursable basis.

14.     Under the Contract, Skanska was required to submit a GMP proposal to AGU within thirty (30) calendar days of Skanska receiving ninety percent (90%) completed drawings and specifications from HCA.  The GMP proposal incorporated Skanska's estimate for the cost of performing the construction work, including a Contractor Contingency, plus a Construction Manager's Fee.  A133-2009 § 2.2.1.

15.     Under Section 2.2.4, funds allocated to the Contractor Contingency were set aside for Skanska's exclusive use, for the purpose of covering costs incurred to address unforeseeable

contingencies that arose during the Construction Phase and increased the cost of performing the construction work.  A133-2009 § 2.2.4.

16.     Skanska was required to obtain AGU's written consent and approval to allocate Contractor Contingency funds for expenditures in excess of $10,000.  Section 2.2.4 provided that AGU's consent to Contractor Contingency allocations "shall not be unreasonably withheld." A133-2009 § 2.2.4.

17.     On December 2, 2016, Skanska submitted a GMP proposal to AGU, offering to perform the construction work for a GMP of $28,343,361.00.

18.     Over the next two months, Skanska and AGU negotiated the GMP proposal and Skanska submitted a revised GMP proposal to AGU on February 3, 2017.

19.     On February 16, 2017, AGU approved the revised GMP proposal, establishing a GMP of $28,119,589.00 ("GMP Amendment").  A true and correct copy of the GMP Amendment is attached hereto and incorporated by reference as Exhibit 2.

20.     The GMP Amendment included a baseline construction schedule reflecting a Substantial Completion date of March 14, 2018 and a Final Completion date of May 16, 2018, which dates were subject to extensions under the Contract.

### Procedures for Changes to the Work

21.     The Contract provided that AGU could direct changes to the construction work by written Change Order or Construction Change Directive.  A201-2007 § 7.1.1.  The General Conditions of Contract stated: "A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor."  A201-2007 § 7.1.2.

22.     Skanska was entitled to an increase in the GMP amount for any Change Order or Construction Change Directive that increased the cost of performing the work, as well as an extension of the schedule and related compensation for any Change Order or Construction Change Directive that extended the time needed to complete the work.  A201-2007 Art. 7.

23.     In the event that Skanska and AGU were unable to agree upon an appropriate price or time extension, Skanska was required to continue performing the work under protest and submit a Claim to AGU under Article 15 of the General Conditions of Contract.  A201-2007 § 15.1.3.

24.     Additionally, if Skanska encountered conditions that increased the cost or time for performing its work—such as errors and omissions in HCA's drawings—it could pursue those issues as claims under Article 15.  A201-2007 §§ 15.1.4, 15.1.5.

25.     Notwithstanding any claim or dispute, AGU was obligated to continue paying Skanska for work performed and over which there was no good faith dispute.  A201-2007 § 15.1.3 ("Owner shall continue to make payments for Work not subject to a bona fide dispute.")

### Approved Changes to the GMP

26.     Over the course of the Project, Skanska and AGU executed a total of eighteen (18) Change Orders, increasing the GMP in the aggregate amount of $3,111,561.50 for additional work ordered by AGU.  The GMP, including approved Change Orders, was $31,498.150.50.

### Unapproved and Unpaid Change Directives and Claims

27.     In addition to Change Orders, there were numerous Construction Change Directives and Claims that increased the cost of performing the construction work, for which AGU wrongfully refused to acknowledge an increase to the GMP.

28.     Skanska encountered Construction Change Directives and Claims increasing the cost of the work by a total of $3,617,945.00, which included extended overhead and general conditions costs due to changes that extended the time needed to complete the Construction Phase.

29.     Including all approved Change Orders and unapproved change directives, the adjusted GMP under the Contract was $35,116,096.30 ("Adjusted GMP").

30.     Skanska did not ultimately incur costs equal to the full amount of the Adjusted GMP.  The total cost of all labor, materials, supervision, equipment, insurance, overhead, and incidentals actually incurred by Skanska to complete the Project was $34,575,393.30.

31.     To date AGU has only paid Skanska $27,432,070.52 in connection with the Project.

32.     No less than $7,143,322.78 is due and owing to Skanska under the Contract, excluding any statutory interest, disbursements, or attorneys' fees.

33.     The final Project accounting is as follows:

| | |
|---|---|
| Original Guaranteed Maximum Price | $28,386,589.00 |
| Approved Changes to the GMP | $3,111,561.50 |
| Unapproved Change Directives and Claims | $3,617,945.80 |
| Total Adjusted GMP | $35,116,096.30 |
| Actual Costs of the Work | $34,575,393.30 |
| Less Amounts Paid to Date | ($27,432,070.52) |
| Amount Due and Owing to Skanska | $7,143,322.78 |

***Delays to Substantial Completion***

34.     The Change Orders, Construction Change Directives, and Claim issues to which Skanska was exposed at the Project prevented Skanska from achieving the original Substantial Completion date reflected in the Project schedule and the GMP Amendment.

35.     Skanska was not responsible for the delays to Substantial Completion, which were caused solely by issues outside of Skanska's fault or control, and which delays are compensable to Skanska under the Contract (the "Delays").

36.     From the outset of the Construction Phase, Skanska was unable to commence the Construction Phase as planned, due to unforeseen delays caused by the District of Columbia Water and Sewer Authority's review and approval of wet well permits for the Project.

37.     On March 17, 2017, AGU and Skanska executed Prime Contract Change Order. 003 ("PCCO 003"), establishing April 3, 2017 as the formal commencement date for the Construction Phase.

38.     PCCO 003 did not include any time adjustment or additional compensation for delays, which were not Skanska's contractual responsibility, noting: "This change order does not include staff costs or general requirement costs attributable to this delay.  These costs will be tracked and submitted under a separate change order request."

39.     Thereafter, Skanska regularly and timely submitted to AGU and its consultants "Authorization Requests" notifying AGU of delays to the Project schedule and detailing the estimated increased costs that Skanska would suffer due to issues outside of Skanska's control.

40.     In the event that Skanska was unable to quantify specific time and cost impacts at the time it issued an Authorization Request, Skanska expressly reserved its rights and advised AGU that Skanska would be submitting a claim for additional costs at a later date.

41.     Once it was fully able to quantify the costs of any Delay (including any Delays that Skanska was able to mitigate during construction), Skanska regularly and timely submitted follow-up "Cost Event" notices identifying the final cost impacts of Authorization Requests.

42.     On December 8, 2018, Skanska completed of all construction work on the interior of the Property.

43.     On December 8, 2018, Skanska submitted Authorization Request 201 / Cost Event 636 to AGU, seeking a time extension of 313 days and an increase of $1,571,731 to the GMP,

which represented the additional overhead, supervision, general conditions, and other compensable costs of extending the anticipated date for Substantial Completion ("Delay Claim").

44.    The Delay Claim only reflected delays and additional compensation for Skanska between April 3, 2017 and December 8, 2018, as reflected in Skanska's November 2018 schedule update.  Skanska notified AGU that the Delay Claim only included "the known impacts at this time – additional impacts will be submitted as they become apparent."

45.    Although the Contract required AGU's consultants to respond to the Delay Claim within ten (10) calendar days, A201-2007 § 15.2.2, AGU and its consultants did not issue a decision denying the Delay Claim until June 7, 2019.

46.    AGU, through its authorized agents, MGAC and HCA, has refused to accept any responsibility for the Delays and additional costs suffered by Skanska as a result of the Delays.

### Contractual Procedures for Progress Payment

47.    Under the Contract, Skanska was to submit monthly progress applications to HCA and MGAC, reflecting all work that Skanska performed or would perform through the last calendar day of that month.  A133-2009 §§ 7.1.2, 7.1.3.

48.    Upon receiving an application for progress payment, HCA and MGAC were required to review the application and meet with Skanska to discuss any portions of the application that they believed required correction or clarification.  A133-2009 § 7.1.3.

49.    HCA had seven (7) calendar days to review payment applications and issue a certificate for payment.  To the extent that HCA believed that it was proper to withhold part or all of the payment application, it was obligated to notify both AGU and Skanska, in writing, of the specific grounds for withholding. Section 9.4.1 of the General Conditions of Contract stated:

§ 9.4.1 The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or *notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1*.

A201-2007 § 9.4.1 (emphasis added).

50.     Section 9.5.1 of the General Conditions of Contract delineated the only permissible grounds upon which AGU was entitled to withhold a certificate for payment, and stated:

§ 9.5.1  The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made.  If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1.  If the Contractor and the Architect cannot agree on a revised amount, the Architect *will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner*.  The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, *to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible*, including loss resulting from acts and omissions described in Section 3.3.2 because of:

.1     defective Work not remedied;
.2     third party claims filed or reasonable evidence indicating probable filing of such claims unless (i) security acceptable to the Owner is provided by the Contractor or (ii) an insurance carrier confirms that the claim is covered by available insurance;
.3     failure of the Contractor to make payments properly to Subcontractor or for labor, material or equipment;
.4     [Intentionally deleted];
.5     damage to the property, to Owner or a separate contractor not otherwise satisfied by Contractor's insurance;
.6     reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or
.7     repeated failure to carry out the Work in accordance with the Contract Documents.

A201-2007 § 9.5 (emphasis added).

51.     Section 9.5.4 of the General Conditions of Contract obligated Skanska to continue performing work during the Construction Phase, notwithstanding HCA's decision to issue or withhold certificates for payment or deduct from payment applications.  A201-2007 § 9.5.4.

52.     The Contract provided that, in the event either party prevailed in a dispute arising thereunder, that party was entitled to reasonable attorneys' fees and costs incurred in connection with any legal proceedings.  A133-2009 § 11.7.

### *AGU Takes Occupancy of the Property and Then Stops Paying Skanska Altogether*

53.     AGU began occupying and using the Property in October 2018, pursuant to a Conditional Certificate of Occupancy.

54.     Starting in 2019, AGU summarily ceased making contractual payments to Skanska.

55.     Skanska submitted Payment Application No. 039, invoicing AGU $667,878.10 for work performed during that month; but AGU's consultants failed to meet with Skanska to discuss Payment Application No. 039, did not issue and certificate for payment within seven days, and did not identify the bases for withholding or the reasons why non-payment of such a large sum was reasonably necessary to protect AGU, as required by the Contract.

56.     Skanska submitted Payment Application No. 040, invoicing AGU $644,285.86 for work performed during that month; but AGU's consultants failed to meet with Skanska to discuss Payment Application No. 040, did not issue and certificate for payment within seven days, and did not identify the bases for withholding or the reasons why non-payment of such a large sum was reasonably necessary to protect AGU, as required by the Contract.

57.     Skanska submitted Payment Application No. 041, invoicing AGU $887,483.41 for work performed during that month; but AGU's consultants  failed to meet with Skanska to discuss Payment Application No. 041, did not issue and certificate for payment within seven days, and did

not identify the bases for withholding or the reasons why non-payment of such a large sum was reasonably necessary to protect AGU, as required by the Contract.

58.     Skanska submitted Payment Application No. 042, invoicing AGU $162,412.45 for work performed during that month; but AGU's consultants  failed to meet with Skanska to discuss Payment Application No. 042, did not issue and certificate for payment within seven days, and did not identify the bases for withholding or the reasons why non-payment of such a large sum was reasonably necessary to protect AGU, as required by the Contract.

59.     Despite AGU's unexplained and unauthorized withholding of progress payments between January and April, Skanska continued work in good faith.

***Skanska Demands that AGU Identify the Grounds for Withholding Progress Payments***

60.     As of Skanska's April 2019 payment application, the Project was substantially completed and only minor punchlist work remained.

61.     On May 1, 2019, Skanska demanded in writing that AGU identify grounds for withholding payment under Application Nos. 039, 040, 041, and 042.  Skanska observed: "It appears to us that AGU is withholding the *entire* outstanding balance from Skanska, without regard for whether there is a good faith dispute to the money at issue.  But under the Contract, AGU has no right to withhold undisputed or approved contract funds form Skanska and is required to specify, in writing, the bases for any withholding of certificates for payment."

62.     On May 6, 2019, after more than four (4) months of ignoring Skanska's payment applications, HCA sent Skanska a one-page letter purporting to justify its prior failures to issue certificates for payment ("Withholding Notice").  A true and correct copy of the Withholding Notice is attached hereto and incorporated by reference as Exhibit 3.

63.     As alleged in the Withholding Notice, HCA believed it was appropriate to withhold the entire balance of outstanding Payment Application Nos. 039, 040, and 041, on the basis that there was "non-conforming work" in place and that previously issued "notices to cure" had put Skanska on constructive notice that it would no longer be getting paid anything.  Ex. 3.

64.     The Withholding Notice did not address Payment Application No. 042 and AGU has never provided any certificate for payment or otherwise given Skanska notice as to why it is necessary or appropriate to withhold the substantial sum due in this Payment Application.

65.     Despite the fact that the Project was complete and only minor punchlist remained, HCA inexplicably alleged that there was over *$4 million* of work remaining.  Ex. 3.

66.     HCA did not explain how it calculated this remarkable figure and did not attempt to justify why such drastic withholding was reasonable to protect AGU.  Ex. 3.

### Alleged Deviations in the Work

67.     Between January 8, 2019 and March 21, 2019, AGU, through its agent, MGAC, sent Skanska eight (8) "Notices to Cure," detailing issues that AGU believed to deviate from the Project drawings (the "NTCs").

68.     Although Skanska disagreed that the items identified in the NTCs were its responsibility, it agreed in good faith to continue work at the AGU's direction.

69.     For several of the NTCs, Skanska notified AGU that the problems alleged by AGU were the product of errors and omissions in the drawings and specifications prepared by HCA.

70.     For example, on January 8, 2019, AGU sent Skanska Notice to Cure #1 (the first of such notices issued to Skanska during the nearly 2-year Construction Phase), asserting that installation of metal elevator surrounds were incomplete in certain areas.

57423565v.1

71.     In response to Notice to Cure #1, Skanska reiterated to AGU what it had stated in previous notices; namely, that the metal material specified by HCA for the elevator surrounds was unsuitable for high-traffic applications and needed to be corrected.

72.     Similarly, many of the NTCs arose out of wholesale changes to the design that were specifically ordered by HCA during the Construction Phase, but which AGU ultimately refused to recognize as a change to the work.

73.     For instance, on February 11, 2019, Skanska received Notice to Cure #3, which purported to identify problems with a water-to-water heat pump installed by Skanska pursuant to Construction Change Directive #43.  Notice to Cure #3 acknowledged that: (i) on July 24, 2018 HCA issued a construction change directive modifying the water to water heat pump; (ii) on July 31, 2018, Skanska notified AGU that the proposed changes created a conflict between the Project drawings and specifications, and; (iii) on August 13, 2018, Skanska notified AGU that it disputed responsibility for design errors and the respective costs of correcting them.

74.     For issues alleged to be construction (as opposed to design) defects, Skanska requested that AGU allocate funding from the Construction Contingency to pay for the added costs arising out of unforeseen and unforeseeable issues in excess of $10,000.

75.     However, AGU unreasonably refused to approve Skanska's requests for allocations to the Construction Contingency in relation to the NTCs.

### AGU Prevents Skanska from Performing Any Further Work

76.      At all times relevant to the Project, Skanska remained ready, willing, and able perform its obligations under the Contract and agreed to perform any work directed by AGU.

77.     On March 31, 2019, while Skanska was on site performing the alleged repair work demanded by AGU, Skanska received a letter from MGAC, advising that AGU was procuring other contractors to perform the limited scope of remaining activities at the Project.

78.     With the exception of limited "punch-list" work, MGAC expressly removed all remaining work from Skanska's contractual responsibility.

79.     Skanska remained at the Project through April 2019 for the purpose of completing minor punch-list items that it acknowledged to be part of its contractual scope of work.

80.     In early May 2019, AGU advised Skanska that AGU would continue to withhold the entirety of the Contract funds due to Skanska until AGU procured other contractors, which AGU suggested would not occur until November 2019.

81.     In its May 6, 2019 Withholding Notice, HCA recommended that AGU continue withholding the full amount due to Skanska "until the full cost to remedy the deficiencies and Notice to Cure items are known." Ex. 3.

82.     AGU has never provided any justification for its assertion that it will cost over $4 million to finish and/or correct the alleged issues raised in the NTCs.

83.     The cost of completing alleged incomplete and defective work does not exceed the balance of the Adjusted GMP.

### *Skanska Files a Notice of Mechanic's Lien*

84.     Several of the subcontractors and suppliers employed by Skanska at the Project remain unpaid on account of AGU's wrongful withholding of payment under the Contract.

85.     On May 16, 2019, Skanska filed a Notice of Mechanic's Lien with the District of Columbia Recorder of Deeds, asserting a lien against the Property for the full amount due and

owing under the Contract ("Notice of Lien").   A true and correct copy of the Notice of Lien is attached hereto and incorporated by reference as Exhibit 4.

86.     On May 16, 2019, Skanska notified AGU by certified mail that it had filed the Notice of Lien against the Property.  Ex. 4.

87.     Skanska has fulfilled all conditions precedent to bringing this action, both under the Contract and at law.

## COUNT I
### (Mechanic's Lien Enforcement)

88.     Skanska restates and incorporates Paragraphs 1 through 87 above as though fully set forth herein.

89.     AGU is the fee simple owner of the real property located at 2000 Florida Avenue, NW, Washington, D.C. 20009 and more fully described in the Notice of Lien.

90.     Skanska provided valuable labor and materials for the improvement of the Property, under a written contract with AGU dated March 11, 2016.

91.     The total value of the work performed by Skanska for the improvement of the Property, including all changes, additions, and credits, was $34,575,393.30.

92.     The total amount due, owing, and unpaid to Skanska for improvements that it made to the Property, including all changes, additions, and credits, is $7,143,322.78.

93.     On May 16, 2019, Skanska timely recorded a compliant Notice of Lien in the land records for the District of Columbia.

94.     Skanska timely notified AGU that it had filed the Notice of Lien in a letter sent by certified mail within five (5) business days of the Notice of Lien being recorded.

95.     Skanska is entitled to a statutory mechanic's lien and foreclosure of the Property to satisfy the unpaid amount of $7,143,322.78 due and owing under the Contract.

57423565v.1

WHEREFORE, Plaintiff Skanska USA Building Inc. respectfully asks this Honorable Court to grant the following relief with respect to Count I of this Verified Complaint:

(i)      Enter judgment in Skanska's favor on Count I of this Verified Complaint and establishing that Skanska has mechanic's lien against the Property in the amount of $7,143,322.78;

(ii)     Order that the Property be sold in a foreclosure sale, with proceeds of the same to satisfy the unpaid amount of $7,143,322.78, which is due and owing to Skanska, and;

(iii)    Grant all other relief in Skanska's favor that the Court deems just and necessary.

### COUNT II
### (Breach of Contract)

96.     Skanska restates and incorporates Paragraphs 1 through 95 above as though fully set forth herein.

97.     The Contract is a valid and enforceable agreement between Skanska and AGU.

98.     The GMP Amendment was incorporated into the Contract and was a valid and enforceable agreement between Skanska and AGU.

99.     AGU had a contractual duty to reimburse Skanska for the costs of labor, materials, supervision, and incidentals necessary to complete the Project, up to the Adjusted GMP.

100.    AGU had a contractual duty to increase the Adjusted GMP and Contract Time, to the extent they were impacted by any Construction Change Directives or Claims at the Project.

101.    AGU had a contractual duty to allocate Construction Contingency funds to pay for the additional costs of issues for which Skanska was not compensated in Change Orders.

102.    The Contract provided that AGU would not unreasonably withhold its consent to allocate funds from the Contractor Contingency for issues in excess of $10,000.

103.    AGU and/or its authorized agents had a contractual duty to review and approve Skanska's progress payment applications in good faith and, within seven (7) calendar days, to issue

Skanska a certificate for payment or otherwise notify Skanska in writing on any grounds for withholding payment.

104.    AGU had an implied contractual duty of good faith and fair dealing and covenanted not to destroy, injure, or interfere with Skanska's performance of work under the Contract or right to payment under the Contract.

105.    AGU materially breached the Contract by failing to increase the GMP for additional costs that were AGU's responsibility under the Contract.

106.    AGU materially breached the Contract by failing to grant Skanska extensions of the Contract Time for issues that delayed Substantial Completion of the Project.

107.    AGU materially breached the Contract by unreasonably withholding its consent to Skanska's request to allocate Construction Contingency funds to pay for costs that were AGU's responsibility under the Contract.

108.    AGU materially breached the Contract by refusing to review payment applications in good faith; failing to issue certificates for payment in connection with Payment Application Nos. 039, 040, 041, and 042; and unreasonably withholding millions of dollars from Skanska, without justification and without notice as required by the Contract.

109.    AGU materially breached the Contract by failing to pay Skanska the $7,143,322.78 that is due and owing to Skanska under the Contract.

110.    AGU materially breached the Contract by failing to act towards Skanska with requisite good faith when it elected to hire other contractors to finish work that Skanska was willing and able to complete, refused to allow Skanska to complete the Project, and notified Skanska that AGU intended withhold amounts from Skanska indefinitely, and without justification.

111.   AGU materially breached the Contract by constructively terminating Skanska for the convenience of AGU, without any good faith basis.

112.   Skanska has fulfilled all of its material obligations to AGU under the Contract.

113.   Skanska is owed the total amount of $7,143,322.78 under the Contract.

114.   As a proximate result of AGU's breach of the Contract, Skanska has suffered damages in an amount to be proven at trial, but which are no less than $7,143,322.78.

WHEREFORE, Plaintiff Skanska USA Building Inc. respectfully asks this Honorable Court to grant the following relief with respect to Count II of this Verified Complaint:

(i)     Enter judgment in Skanska's favor on Count II of the Verified Complaint;

(ii)    Order AGU to pay Skanska compensatory damages in the amount of $7,143,322.78, plus costs, pre-judgment interest, post-judgment interest, and reasonable attorneys' fees provided for in the Contract, and;

(iii)   Grant all other relief in Skanska's favor that the Court deems just and necessary.

## COUNT III
### (Statutory Interest and Attorneys' Fees Under D.C. Code Ann. § 27-133)

115.   Skanska restates and incorporates Paragraphs 1 through 114 above as though fully set forth herein.

116.   As defined in the D.C. Code, Skanska is a "Contractor;" AGU is an "Owner;" and the agreement between Skanska and AGU is a "Contract."  D.C. Code Ann. § 27-131.

117.   Section 9.4.1 of the General Conditions of Contract, A201-2007, required AGU and its consultants to issue certificates for payment to within seven (7) calendar days of receiving an application for progress payment from Skanska.

57423565v.1

118.    Section 7.1.3 of the Standard Form Agreement Between Owner and Construction Manager, A133-2009, required AGU to pay all undisputed amounts to Skanska within thirty (30) calendar days of when HCA made its recommendations to AGU.

119.    Skanska submitted Payment Application Nos. 039, 040, 041, and 042, seeking reimbursement for work that it performed during the months of January 2019, February 2019, March 2019, and April 2019, respectively.

120.    The total amount invoiced to AGU in Payment Application Nos. 039, 040, 041, and 042 was $2,362,059.82.

121.    On May 6, 2019, HCA made its recommendation that AGU withhold all payment from Skanska for amounts invoiced in Payment Application Nos. 039, 040, 041.

122.    HCA never issued any recommendation regarding Payment Application No. 042.

123.    HCA did not issue the Withholding Notice in good faith and there is no bona fide dispute over the amounts invoiced by Skanska in Payment Application Nos. 039, 040, 041, and 042.

124.    Under the Contract, AGU was required in good faith to pay Skanska no less than $2,362,059.82 by June 5, 2019.

125.    Despite demand, AGU has refused to pay Skanska amounts for which there is no good faith dispute.

126.    Under D.C. Code Section 27-133, Skanska is entitled to statutory interest on the amounts invoiced in Payment Application Nos. 039, 040, 041, and 042, as well as any costs, disbursements, and reasonable attorneys' fees incurred to bring the instant action.

WHEREFORE, Plaintiff Skanska USA Building Inc. respectfully asks this Honorable Court to grant the following relief with respect to Count III of this Verified Complaint:

57423565v.1

(i)     Enter judgment in Skanska's favor on Count III of the Verified Complaint;

(ii)     Order AGU to pay interest in the amount of one and a half percent (1.5%) per month on the $2,362,059.82 in undisputed amounts invoiced in Payment Application Nos. 039, 040, 041, and 042, starting from June 5, 2019, until the date payment is actually made by AGU;

(iii)     Order AGU to reimburse Skanska for all costs, disbursements, and reasonable attorneys' fees incurred by Skanska in bringing this action, and;

(iv)     Grant all other relief in Skanska's favor that the Court deems just and necessary.

Dated: June 24, 2019

Respectfully Submitted,

*/s/ Anthony LaPlaca*
Anthony J. LaPlaca (Bar No. 1018207)
Bennett D. Greenberg (Bar No. 358312)
SEYFARTH SHAW LLP
975 F Street, NW
Washington, D.C. 20004
Tel.: (202)-463-2400
Fax: (202)-828-5393
E-mail: alaplaca@seyfarth.com
       bgreenberg@seyfarth.com
***Counsel for Plaintiff Skanska USA Building Inc.***

**<u>VERIFICATION</u>**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 21, 2019.

Dale Kopnitsky
Executive Vice President
Skanska USA Building Inc.

21